# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TAMMARA SPROED,

    Plaintiff,

v.

BVT HBAVARIA LIMITED
PARTNERSHIP,

    Defendant.

Case No. 2:09-cv-1773-LDG (GWF)

**ORDER**

In her original complaint, Tammara Sproed, named only her employer, BVT HBAVARIA, LP, as a defendant, alleging BVT knew of but failed to respond to acts of sexual harassment and retaliation by Sproed's supervisor, Fred Stadler.  In addition to her First Cause of Action (which was broadly "based upon Title VII"), Sproed alleged common law claims against BVT for intentional infliction of emotional distress, assault and battery, and negligent hiring and/or negligent supervision.  On BVT's motion, the Court dismissed the common law claims without prejudice as pre-empted by the Nevada Industrial Insurance Act, Nev. Rev. Stat. §616A.005, *et seq.*, to the extent Sproed alleged her injuries arose from Stadler's sudden and violent conduct.

1    Sproed subsequently filed an amended complaint which <u>only</u> added an additional

2    Title VII claim for retaliatory discharge.

3    BVT moves to dismiss (#32) the common law claims in the First Amended

4    Complaint.  BVT argues that these claims must be dismissed because (a) the First

5    Amended Complaint did not allege any conduct by BVT that would state a claim, and (b)

6    the Court dismissed the claims against BVT to the extent Sproed sought to hold BVT liable

7    for Stadler's conduct.  Sproed opposes the motion (#33).

8    Sproed moves for leave to file (#37) a Second Amended Complaint to add several

9    defendants, including Stadler, the general partners of BVT, and the members of one of

10   BVT's partners (which she further alleges are the "owners and operators" of the restaurant

11   where BVT employed Sproed).  BVT opposes the motion (#40), in part because Sproed

12   failed to file points and authorities in support of her motion.

13   Motion to Dismiss

14   The defendant's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6),

15   challenges whether the plaintiff's complaint states "a claim upon which relief can be

16   granted."  In ruling upon this motion, the court is governed by the relaxed requirement of

17   Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim

18   showing that the pleader is entitled to relief."  As summarized by the Supreme Court, a

19   plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that

20   is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

21   Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's

22   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

23   and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

24   *Id.*, at 555 (citations omitted).  In deciding whether the factual allegations state a claim, the

25   court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . .

26   dismissals based on a judge's disbelief of a complaint's factual allegations."  *Neitzke v.*

2

1   *Williams*, 490 U.S. 319, 327 (1989).  Further, the court "construe[s] the pleadings in the

2   light most favorable to the nonmoving party."  *Outdoor Media Group, Inc. v. City of*

3   *Beaumont*, 506 F3.d 895, 900 (9th Cir. 2007).

4          However, bare, conclusory allegations, including legal allegations couched as

5   factual, are not entitled to be assumed to be true.  *Twombly*, 550 U.S. at 555.  "[T]he tenet

6   that a court must accept as true all of the allegations contained in a complaint is

7   inapplicable to legal conclusions."  *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949

8   (2009).  "While legal conclusions can provide the framework of a complaint, they must be

9   supported by factual allegations."  *Id.,* at 1950.  Thus, this court considers the conclusory

10   statements in a complaint pursuant to their factual context.

11          To be plausible on its face, a claim must be more than merely possible or

12   conceivable.  "[W]here the well-pleaded facts do not permit the court to infer more than the

13   mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the

14   pleader is entitled to relief."  *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)).  Rather, the factual

15   allegations must push the claim "across the line from conceivable to plausible."  *Twombly*.

16   550 U.S. at 570.  Thus, allegations that are consistent with a claim, but that are more likely

17   explained by lawful behavior, do not plausibly establish a claim.  *Id.*, at 567.

18          In her opposition to BVT's motion to dismiss, Sproed suggests that the court clarify

19   its prior order partially dismissing her common law claims.  In light of the arguments raised

20   by Sproed in her opposition, and her failure to allege any new facts in support of her

21   common law claims against BVT, the Court agrees that a clarification is appropriate.

22   Sproed appears to have not understood that the prior order dismissed (without prejudice)

23   her common law claims against BVT for any and all injuries or damages attributable to

24   Stadler's conduct.

25          BVT argued that the NIIA preempted the common law claims against it.  Sproed

26   opposed, arguing that none of the facts alleged met the NIIA's definition of accident: (1) an

3

1   "unexpected or unforeseen event," (2) "happening suddenly and violently," (3) that

2   produces "at the time objective symptoms of an injury."

3            The Court limited its discussion of Sproed's opposition to whether the events

4   causing her injuries were unexpected or unforeseen to BVT because, as a matter of law,

5   Sproed cannot establish any of her common law claims against BVT without establishing

6   that the events happened "suddenly and violently" and produced "at the time objective

7   symptoms of an injury," as those terms have been interpreted by the Nevada Supreme

8   Court.  The Nevada Supreme Court has indicated that "'violently' is properly descriptive of

9   any cause efficient in producing a harmful result."  *American Intern. Vacations v. MacBride*,

10  99 Nev. 324, 327, 661 P.2d 1301 (1983).  To state her common law claims, Sproed must

11  allege facts permitting an inference that BVT or Stadler engaged in conduct capable of

12  causing her injuries.  By making such an allegation, however, Sproed necessarily alleges

13  facts requiring a conclusion that the conduct happened suddenly and violently for purposes

14  of determining NIIA pre-emption.  Stated otherwise, Sproed cannot establish any of her

15  common law causes of action against BVT without also establishing that the event or

16  events causing her injuries happened suddenly and violently.

17           Further, as to whether an event produces at the time objective symptoms of injury,

18  the Nevada Supreme Court has stated that "the correct interpretation of the statutory

19  requirement is that the symptoms must manifest themselves within a reasonable time."  *Id*.

20  In support, the Nevada Supreme Court cited *Schoenrock v. School District of Nebraska

21  City*, 179 Neb. 621, 139 N.W.2d 547, 551 (1966) for the proposition that symptoms

22  appearing "according to the natural course in such matters without any independent

23  intervening cause being shown" met the statutory requirement of "producing at the time".

24  To allege (or show) that the objective symptoms did not manifest within a reasonable time

25  is to allege (or show) that the injury was produced by an intervening cause.  Thus, an

26  objective symptom does not manifest within a reasonable time when the delay in

4

1    manifestation establishes that an intervening cause, rather than the event, produced the

2    injury.  Sproed cannot avoid NIIA pre-emption by establishing that her symptoms did not

3    manifest within a reasonable time without also establishing that BVT's or Stadler's conduct

4    did not cause her injuries.

5          In sum, Sproed cannot maintain her common law claims without also establishing

6    that the events underlying her claims happened "suddenly and violently" and produced "at

7    the time objective symptoms of injury."  Thus, Sproed may avoid NIIA preemption of her

8    claims against BVT only by showing that the events were not expected or foreseen by BVT,

9    as that phrase has been interpreted by the Supreme Court.  An employer does not expect

10   or foresee events even if aware of conditions that might result in an event.  Rather, the

11   Nevada Supreme Court's decisions broadly interpreting "accident" within the context of the

12   NIIA indicate that the only events which are not "accidents" occur when the employer

13   specifically intends to harm the employee.

14         In deciding BVT's first motion to dismiss, the Court construed Sproed's common law

15   claims against BVT as resting upon two different types of conduct: (a) the conduct of BVT,

16   and (b) the conduct of Stadler.  As the issue before the Court was solely whether the NIIA

17   pre-empted Sproed's common law claims, the Court assumed that Sproed adequately

18   alleged facts supporting each common law claim, and then considered whether the

19   allegations necessary to state each common law claim would also require a finding that the

20   claim was pre-empted.

21         As to claims against BVT resting upon the conduct of BVT, the Court assumed that

22   Sproed adequately alleged facts supporting an inference that BVT specifically intended to

23   harm her.  Accordingly, the Court denied the motion to dismiss the claims, to the extent

24   they arose from BVT's conduct, as pre-empted by the NIIA.

25         As to the claims against BVT resting upon the conduct of Stadler, the Court

26   assumed Sproed alleged sufficient facts of Stadler's conduct that, if attributed to BVT,

5

1  would support a common law claim against BVT.  As Sproed brought each claim against

2  BVT, the Court considered only whether Sproed alleged sufficient facts to avoid NIIA pre-

3  emption of her claim as against BVT.  That is, the Court considered whether Sproed

4  alleged facts showing that BVT expected or foresaw Stadler's conduct; whether Sproed

5  alleged facts showing BVT specifically intended to harm Sproed.  As Sproed had not

6  alleged any facts suggesting that BVT intended to harm her through Stadler's sudden and

7  violent conduct, the Court determined that Sproed had, at most, alleged facts indicating

8  that her her common law claims against BVT that rested upon Stadler's sudden and violent

9  conduct were preempted by the NIIA.

10       In its second motion to dismiss, BVT argues that Sproed has not alleged sufficient

11  facts supporting her common law claims against BVT.  Again, as Sproed named only BVT

12  in her Amended Complaint, the Court construes the common law claims against BVT as

13  arising either from (a) the alleged conduct of BVT, or (b) the alleged conduct of Stadler that

14  is attributable to BVT (but which was not previously dismissed as pre-empted by the NIIA.)

15       The common law claims against BVT that seek to hold BVT liable for the alleged

16  conduct of Stadler (ie, those aspects of the claims not previously dismiss as pre-empted by

17  the NIIA) must now be dismissed with prejudice for failure to state a claim.  Sproed cannot

18  maintain any of her common law claims against BVT arising from any conduct by Stadler

19  that would not be considered "sudden and violent" for purposes of NIIA pre-emption.  If

20  Stadler's conduct was not "sudden and violent," Stadler's conduct could not have caused

21  her injuries.  The Court has previously dismissed Sproed's common law claims arising from

22  conduct by Stadler that was "sudden and violent," (and thus capable of causing her

23  injuries).  Sproed did not amend her complaint to add allegations supporting an inference

24  that BVT specifically intended to harm her through Stadler's conduct.  Accordingly, the

25  Court will dismiss with prejudice Sproed's common law claims against BVT that seek to

26  hold BVT liable for Stadler's conduct.

6

1    For similar reasons, Sproed's common law claims against BVT arising from any

2    conduct by BVT that would not be considered "sudden and violent" must also be dismissed

3    with prejudice.  Sproed cannot establish that BVT engaged in conduct that was not

4    "sudden and violent" without also establishing that the conduct did not cause her injuries.

5    Additionally, the Court must dismiss, with prejudice, Sproed's common law claims

6    against BVT to the extent that she seeks recovery for those injuries as to which, she

7    alleges or argues, the objective symptoms did not manifest in a reasonable time.  Sproed

8    cannot establish that symptoms of an injury did not appear in a reasonable time without

9    also establishing that the injury was not caused by the conduct of BVT (or Stadler).

10    The only remaining issue before the Court is whether Sproed has alleged sufficient

11    facts regarding BVT's conduct to hold BVT liable under each of her common law claims.

12    <u>Assault and Battery</u>

13    To allege battery against BVT, Sproed must allege facts permitting an inference that

14    BVT engaged in a harmful or offensive contact or touching of Sproed.  To allege assault

15    against BVT, Sproed must allege facts permitting an inference that BVT engaged in

16    conduct to cause Sproed to apprehend a harmful or offensive contact by BVT.  Sproed's

17    opposition makes plain that her common law claims for assault and battery against BVT do

18    not rest upon any conduct by BVT, but instead rest solely upon Stadler's conduct.  Her

19    opposition further makes plain that she rests her claims solely upon intentional conduct by

20    Stadler that would not be "sudden and violent" and thus incapable of producing an injury.

21    The Court will dismiss these common law claims against BVT with prejudice.

22    <u>Negligent Hiring and Supervision</u>

23    While Sproed's claims against BVT for negligent hiring and supervision arise from

24    BVT's conduct, her opposition makes plain that she seeks to hold BVT liable for negligently

25    failing to prevent Stadler's behavior.  Sproed has not identified any allegation that BVT

26    hired Stadler with the specific intent to harm her, or that it supervised him with the specific

7

1   intent of harming her.  (Further, to the extent that Sproed argues that her claim arises from

2   conduct by Stadler that was not "sudden and violent" for purposes of determining NIIA pre-

3   emption, her claim must fail as a matter of law.)

4               Intentional Infliction of Emotional Distress

5               As noted above, the Court has dismissed Sproed's intentional infliction of emotional

6   distress claim against BVT that attributes liability to BVT for Stadler's conduct.  The

7   remaining issue is whether Sproed alleged facts permitting an inference that BVT engaged

8   in "extreme and outrageous" conduct.  The only allegations of BVT's conduct is that BVT

9   "failed to take corrective action and in fact retaliated against her by changing her working

10  conditions and ultimately firing her" after she complained of Stadler's conduct.  The

11  "termination of employees, even in the context of a discriminatory policy, does not in itself

12  constitute extreme and outrageous conduct actionable under an intentional infliction of

13  emotional distress theory."  *Alam v. Reno Hilton Corp*., 819 F.Supp. 905, 911 (D. Nev.

14  1993).  Accordingly, Sproed has failed to allege sufficient facts of BVT's conduct to support

15  her claim against BVT.  Nevertheless, the Court will dismiss Sproed's intentional infliction

16  of emotional distress claim without prejudice to permit Sproed an opportunity to allege facts

17  of BVT's conduct that would permit an inference that BVT engaged in extreme and

18  outrageous conduct that was specifically intended to harm her.

19              Motion for Leave to File Second Amended Complaint

20              In light of the order dismissing some claims against BVT with prejudice, and as

21  Sproed's proposed Second Amended Complaint does not reflect the dismissal of those

22  claims, the Court will deny her motion for leave to file the proposed Second Amended

23  Complaint.  The Court will, however, grant Sproed leave to file a further motion for leave to

24  file a second amended complaint.  The Court would caution, however, that Sproed must file

25  points and authorities in support of that motion establishing that her claims are not futile as

26  to each proposed defendant.  Further, the Court will deny leave if the proposed second

8

amended complaint re-asserts claims against BVT that have been dismissed with prejudice by this Order.

Therefore, for good cause shown,

THE COURT **ORDERS** that Defendant's Motion to Dismiss (#32) is GRANTED as follows: Plaintiff's Third and Fourth Claims for Relief against BVT are DISMISSED with prejudice; Plaintiff's Second Claim for Relief is DISMISSED with prejudice to the extent it seeks to hold BVT liable for the conduct of Stadler; Plaintiff's Second Claim for Relief is DISMISSED without prejudice to the extent it seeks to hold BVT liable for BVT's conduct.

THE COURT FURTHER **ORDERS** that Plaintiff's Motion for Leave to File a Second Amended Complaint (#37) is DENIED without prejudice as moot.

THE COURT FURTHER **ORDERS** that the last date for filing motions to amend the pleadings or add parties shall be 15 days from the entry of this Order.

DATED this _____ day of April, 2011.

Lloyd D. George
United States District Judge

9